FILED
2002 APR 17 P 3:44
CLERK, US DIST. COURT
EASTERN DIST. OF CALIF
BY_____
DEPUTY

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL WAYNE GOLDEN, JACOB GOLDEN, JESSICA GOLDEN, and HEIDI MILLER,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF FRESNO, et al.,<br><br>    Defendants. | CIV-F-00-7173 OWW SMS<br><br>MEMORANDUM DECISION AND ORDER RE: CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; COUNTY DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT; AND COUNTY DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT |

Before the court are the county defendants'[1] motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; county defendants' motion for a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure; and the city defendants'[2] summary judgment motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

---

[1] The county defendants are: Fresno County; Sheriff Richard Pierce; Robert L. Hagler, Jr.; Richard Ko; Bret P. McAndrews; and John A. Avila.

[2] The city defendants are the City of Fresno, Lt. Hall, Officer Chastain, and Officer Brisendine.

1



I. **FACTUAL AND PROCEDURAL BACKGROUND**[3]

On December 29, 1999, plaintiffs Michael, Jacob, and Jessica Golden traveled to the Fresno County Sheriff's Department to turn in two automatic rifles pursuant to a voucher program. Third Am. Compl. ¶ 6. While at the Sheriff's Office, plaintiffs allege that they were assaulted, detained without cause, and interrogated by defendant Ko in connection with an ongoing investigation into the theft of explosive devices. *Id*. During the questioning, Michael Golden denied any knowledge of the explosives. *Id*. Michael, Jacob, and Jessica Golden left the Sheriff's Office at approximately 5:00 p.m. after being there about one hour. *Id*.

Plaintiffs allege that while driving home, Michael Golden became suspicious that they were being followed and pulled over to the side of the road. *Id*. at ¶ 7. County Sheriff's officers including defendants Deputy Avila, Lt. Hagler, and Deputy McAndrews, then jumped out of an unmarked car wearing ski masks and surrounded plaintiffs' car at gunpoint. *Id*. Defendants physically removed Michael Golden from the vehicle at gunpoint, searched him, and placed him in a marked vehicle. *Id*. Plaintiffs contend that defendants traumatized Jacob and Jessica by pointing loaded guns at them, shouting and screaming, and separating them from their father. *Id*. Plaintiffs allege that defendants did not identify themselves as law enforcement

---

[3]The following statement of facts are plaintiffs' allegations taken from the third amended complaint and are not intended to be a statement of undisputed facts or a judicial finding of facts.

officers throughout the ordeal and therefore Michael, Jacob, and Jessica Golden believed they were being kidnaped by highwaymen. *Id.* at ¶ 8.

Michael, Jacob, and Jessica Golden were later transported to their residence arriving at approximately 6 p.m. *Id.* at ¶ 9. Plaintiffs allege that the front door to their home had been battered open and their house ransacked by defendants. *Id.* at ¶¶ 9-10. Plaintiffs allege that Michael Golden requested a search warrant, but Lt. Hagler refused his request. *Id.* at ¶ 11. Plaintiffs contend that Michael Golden was not informed of his *Miranda* rights, was unlawfully interrogated regarding the explosives theft, and was denied permission to consult with his attorney. *Id.* at ¶ 12. Michael Golden and Heidi Miller were allegedly denied access to Jessica Golden's heart medication. *Id.* at ¶ 14.

At approximately 7 p.m., Heidi Miller arrived at the residence. *Id.* at ¶ 13. According to plaintiffs, defendant sheriff officers stopped and demanded to see Ms. Miller's driver's license while she was driving in front of the Golden residence. After showing the license to defendants, plaintiffs allege that the officers moved their car so that Ms. Miller could drive onto Michael Golden's property thereby "entrapping her into the unlawful scenario." *Id.* After entering the property, plaintiffs allege that Ms. Miller's car was unlawfully searched, she was forced to enter the Golden residence, and she was prevented from consulting with her attorney. *Id.* at ¶¶ 13-14.

Michael Golden's attorney arrived at approximately 9 p.m. *Id.* at ¶ 15. Plaintiffs allege that he was denied access to the

3

residence, and was threatened with arrest if he did not stop taking photographs. *Id.* At approximately 10 p.m. plaintiffs were shown a copy of the search warrant by Lt. Hagler and shortly thereafter were given a receipt stating nothing was found or removed from the Golden residence. *Id.*

Plaintiffs allege defendants, Special Agent Mayfield,[4] Deputy Avila, Lt. Hagler, Deputy McAndrews, Deputy Ko, Lt. Hall, Officer Chastain, and Officer Brisendine intentionally, wantonly, and unnecessarily destroyed plaintiffs' property. *Id.* at ¶ 16. Plaintiffs assert that defendants stole property including, a collection of gold and silver coins valued at $30,000 to $40,000. *Id.* at ¶ 17. No illegal firearms or explosives were found at the residence. *Id.* Plaintiffs also allege that the defendants' conduct was directed by Sheriff Richard Pierce to retaliate for Michael Golden's public criticism of the Fresno County Sheriff's office. *Id.* at ¶ 17.

On December 26, 2000 plaintiffs filed suit. On January 1, 2001, they filed their first amended complaint. Defendants filed motions to dismiss the first amended complaint for failure to state a claim. On July 13, 2001 the motions were granted with leave to amend except for the motion to dismiss the Bureau of Alcohol, Tobacco, and Firearms (BATF) which was granted with prejudice. On August 31, 2001, plaintiffs filed a second amended complaint.

On September 7, 2001 the county defendants and city

---

[4]Special Agent Mayfield was dismissed from this case with prejudice on January 15, 2002.

defendants filed motions to dismiss for failure to state a claim or in the alternative a motion for a more definite statement. On September 14, 2001, defendant Gary Mayfield filed a motion to dismiss. The county defendants' motion was denied as to Jacob and Jessica Golden's standing to sue and the insufficiency of the *Monell* claim. The county defendants' motion to dismiss was granted as to the conspiracy allegations and Ms. Miller's standing to bring suit based on the search of the Golden residence. The city defendants' motion to dismiss was denied as to the theft claim. City defendants' motion to dismiss was granted as to the claim the search warrant was fraudulently obtained and the destruction of property allegation. Special Agent Mayfield's motion to dismiss based on the insufficiency of service was denied. His motion was granted as to the conspiracy allegation, the assault allegation, the destruction of property allegation, and Ms. Miller's claims. The county defendants' motion for a more definite statement was granted. Special Agent Mayfield's motion to dismiss was granted with prejudice as to the claim he procured a search warrant under false pretenses. All of the other claims that were dismissed for failure to state a claim were dismissed without prejudice.

On December 19, 2001, plaintiffs filed a third amended complaint. On December 31, 2001, the county defendants moved to dismiss the complaint for failure to state a claim or in the alternative for a more definite statement. On January 15, 2002, Special Agent Mayfield was dismissed with prejudice. On February 6, 2002, the city defendants moved for summary judgment on the theft claim. Following oral argument, the city defendants were

5

given until April 8, 2002 to file supplementary authority and plaintiffs were given until April 15, 2002 to respond. On April 10, the city defendants and plaintiffs lodged a stipulation dismissing with prejudice the city defendants. On April 15, 2002, the city defendants were dismissed.

## II. LEGAL STANDARDS

### A. RULE 12(b)(6)

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is disfavored and rarely granted. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (holding issue is not whether plaintiff will ultimately prevail, but whether claimant is entitled to offer evidence to support the claim). In deciding a motion to dismiss, the court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *Oscar v. Univ. Students Co-op Ass'n.*, 965 F.2d 783, 785 (9th Cir. 1992); *NL Industries v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

In deciding a motion to dismiss a court may consider matters of public record, including pleadings, orders, and other papers filed with the court or records of administrative bodies. *Mack v. South Bay Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds, Astoria Fed. Sav. & Loan Ass'n*

6

1  v. *Solimino*, 501 U.S. 104 (1991). The court may also consider
2  exhibits attached to the complaint. *Durning v. First Boston
3  Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987). "[A] document is not
4  'outside' the complaint if the complaint specifically refers to
5  the document and if its authenticity is not questioned." *Branch
6  v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). The court does not
7  have to accept as true allegations contradicted by documents
8  referred to in the complaint. *Steckman v. Hart Brewing Inc.*, 143
9  F.3d 1293, 1295-96 (9th Cir. 1998). Conclusions of law need not
10 be accepted simply because they are pled as allegations. *Western
11 Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

13 **B.  RULE 12(e)**
14     Federal Rule of Civil Procedure 12(e) provides:
15
> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired. If the motion is granted and the order of the court is not obeyed within 10 days after notice of the order or within such other time as the court may fix, the court may strike the pleading to which the motion was directed or make such order as it deems just.

21 A Rule 12(e) motion is only proper if the defendant cannot file a
22 responsive pleading. *Famolare, Inc. v. Edison Bros. Stores,
23 Inc.*, 525 F.Supp. 940, 949 (C.D. Cal. 1981). A court should deny
24 a Rule 12(e) motion if the detail sought by a motion for more
25 definite statement is obtainable through discovery. *Beery v.
26 Hitachi Home Elecs. (Am.), Inc.*, 157 F.R.D. 477, 480 (C.D. Cal.
27 1993).

## III. DISCUSSION

### A. COUNTY DEFENDANTS' MOTION TO DISMISS

The county defendants' move to dismiss: 1) the conspiracy claim; 2) the excessive force claim; and 3) the claim against Deputy Ko that he procured a search warrant under false pretenses.

#### 1. Conspiracy Claim

The county defendants' move to dismiss the conspiracy claim because plaintiffs failed to allege nonconclusory facts showing evidence of unlawful intent. Plaintiffs concede they did not state a conspiracy claim and state that they did not intend to state such a claim. The November 15, 2001 memorandum decision and order dismissed plaintiff's conspiracy claim stating that plaintiffs were required to state nonconclusory allegations. The county defendants' motion to dismiss the conspiracy claim is GRANTED, WITH PREJUDICE; plaintiffs were specifically advised what was required to state a conspiracy claim and did not amend their complaint accordingly.

#### 2. Excessive Force Claim

The county defendants argue that the allegations in the third amended complaint are not sufficient to support an excessive force claim. They argue that the only allegations relating to the excessive force claim are: 1) plaintiffs were physically removed from vehicles; and 2) were physically brought into the Golden residence. Plaintiffs contend that the entire context of the defendants' actions should be considered,

8

including 1) sheriff's officers followed defendants in an unmarked police car; 2) the officers, who did not identify themselves, pointed weapons at Michael, Jacob, and Jessica Golden; 3) the officers yelled at Michael, Jacob, and Jessica Golden; 4) the officers did not identify themselves or tell plaintiffs they were under arrest; 5) plaintiffs believed they were being kidnaped by highwaymen; 6) the officers deprived Michael Golden of his right to consult with his attorney; and 7) they refused access to Jessica Golden's medication.

Excessive force claims that arise out of law enforcement officers' "seizure" of a free citizen are analyzed under the Fourth Amendment reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). Not all assaults are constitutional violations. *Graham v. Connor*, 490 U.S. 386, 396 (1989); *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001). To determine whether force is excessive there must be "a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)). This requires "careful attention to the facts and circumstances" of the particular case. *Id.* Factors to be considered include the severity of the crime, whether the suspect poses an immediate threat to the officers or others; and whether the suspect is resisting arrest or attempting to flee. *Id.* The "type and amount of force inflicted" must be considered. *Jackson*, 268 F.3d at 651-52 (quoting *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994)). Factors other than those cited in *Graham* can be

considered. *Robinson v. Solano County*, 278 F.3d 1007, 1014 (9th Cir. 2002). For instance, relevant factors include whether a warrant was used, whether plaintiff resisted or was armed, the number of arrestees and officers involved, whether the plaintiff was sober, the nature of the arrest charges, and whether other "dangerous or exigent circumstances existed at the time of the arrest." *Id.*

The reasonableness inquiry is objective. *Graham,* 490 U.S. at 397. "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* Reasonableness is determined based on the information the officers had at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2159 (2001). Reasonableness is normally a jury question, however, it "may be decided as a matter of law if, in resolving all factual disputes in favor of the plaintiff, the officer's force was 'objectively reasonable' under the circumstances." *Jackson*, 268 F.3d at 651 n.1.

In analyzing whether pointing a gun at a suspect can constitute excessive force the Ninth Circuit held: "[A]s a general principle . . . pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger." *Robinson*, 278 F.3d at 1015. In reaching this conclusion, the court cited approvingly several cases that found excessive force in connection with pointing a weapon at the plaintiff, including *McKenzie v. Lamb,*

10

738 F.2d 1005, 1010 (9th Cir. 1984) (holding that a raid not supported by probable cause involved excessive conduct where, inter alia, police officers "pressed the barrels of their guns against appellants' heads" and refused to identify themselves as police officers); *Black v. Stephens*, 662 F.2d 181 (3d Cir. 1981) (upholding jury verdict against officer on excessive force claim where during an arrest an unidentified officer pointed a gun at plaintiff's head with plaintiff's wife directly in the line of fire); *McDonald v. Haskins*, 966 F.2d 292 (7th Cir. 1992) (holding that pointing a gun at the head of a nine-year old and threatening to shoot during a search of an apartment was excessive force); and *Baker v. Monroe Township*, 50 F.3d 1186 (3d Cir. 1995) (holding that officers could be liable for a Fourth Amendment violation where, during the course of a drug raid, they pointed guns at people not under suspicion, handcuffed them, and detained them for 25 minutes).

Here, the circumstances viewed in the light most favorable to the plaintiffs are: Michael Golden, and adult, and Jacob and Jessica Golden, minors, stopped on the side of the road on their way home from turning in weapons pursuant to a voucher program at the Sheriff's Office. While at the Sheriff's Office Michael Golden had been questioned about the theft of explosives based on information provided to the Sheriff's deputies by an informant. Sheriff's deputies that were riding in an unmarked car surrounded the Goldens' car and pointed weapons at the plaintiffs. Michael Golden was then searched and placed in a marked police car that had arrived at the scene. Michael, Jacob, and Jessica Golden were then taken to their home where they were told to wait while

the house was searched. Heidi Miller was "physically forced" into the house. While waiting for approximately four and a half hours, Jessica Golden was denied her medication and Michael Golden and Heidi Miller were denied access to their attorneys. No illegal weapons or explosives were found in the house and plaintiffs were not arrested. Plaintiffs also assert that there was no probable cause for the search warrant and it was issued in retaliation for Michael Golden exercising his First Amendment rights. Plaintiffs contend that they did not resist.

Considering the totality of these facts, and in light of the *Robinson* factors, plaintiffs' evidence is sufficient to assert an excessive force claim. They have alleged that weapons were pointed not only at Michael Golden, but also at his two minor children, by law enforcement officers who were not clearly identified as such. Plaintiffs were moved to the Golden residence where they were forced to sit for several hours without access to Jessica Golden's medication. They also allege that their vehicle was stopped and their residence searched without probable cause, in retaliation for public criticism by Michael Golden of Sheriff Pierce and other city and county officials. The county defendants' motion is DENIED as to the excessive force claim.

### 3. Deputy Ko's Qualified Immunity

The county defendants argue that Deputy Ko is entitled to qualified immunity as a matter of law as the procuring officer for the search warrant, because plaintiffs do not allege sufficient facts to show that Deputy Ko knew his information was

12

false and deceived the judge in obtaining the search warrant. Plaintiffs argue that they have alleged sufficient facts under Rule 8 of the Federal Rules of Civil Procedure.

"[G]overnment officials performing discretionary functions [are entitled to] qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Qualified immunity should be decided at the earliest possible stage. *Saucier*, 121 S.Ct. at 2156 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)) ("The privilege is 'an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.'") (emphasis in original).

To decide whether qualified immunity is appropriate, a court must: 1) determine whether a constitutional right would have been violated based on the facts alleged; and 2) decide whether the right was clearly established. *Id.* at 2155. If a court finds that no constitutional right has been violated then the second question need not be addressed. *Id.* at 2156. When deciding whether a constitutional violation may have occurred, the facts should be viewed in the light most favorable to the plaintiff. *Id.*

To plead a constitutional injury against an officer based on a claim that the officer deceived a judge in procuring a search warrant, a plaintiff must: 1) point out specifically the portion of the affidavit that is claimed to be false; 2) allege some facts that show the defendant was aware, or should have been

13

aware, that the assertions were false; and 3) allege that the false statements were "necessary to the finding of probable cause." *Branch v. Tunnell*, 14 F.3d 449, 452 (9th Cir. 1994). "[W]hen plaintiffs sue public officials in their individual capacity under § 1983, to survive a [Rule 12(b)(6)] motion to dismiss, plaintiffs must state in their complaint nonconclusory allegations setting forth evidence of unlawful intent. The allegations of facts must be specific and concrete enough to enable the defendants to prepare a response, and where appropriate, a motion for summary judgment based on qualified immunity." *Lee v. City of Los Angeles*, 250 F.3d 668, 680 n.6 (9th Cir. 2001) (quoting *Branch*, 14 F.3d at 452).

Here, plaintiffs allege that: 1) the portions of the affidavit relating to the presence of illegal weapons and explosive devices in the Golden residence were false; 2) that Ko knew, or should have known, that his information was unreliable and incomplete; and 3) that without the statements the search warrant would not have issued. The question here is whether plaintiffs' have alleged sufficient nonconclusory facts to show Deputy Ko's unlawful knowledge and intent. The facts set forth by the plaintiffs are inferential: 1) if Deputy Ko really believed explosive devices were in the home he would not have forced plaintiffs to sit in the residence during the search;[5] 2) the search warrant was obtained after the search had already

---

[5] The county defendants argue that plaintiffs have not alleged that Deputy Ko was in the house during the search. However, plaintiffs did allege that Deputy Ko participated in the search. See Doc. 83 at ¶ 16.

begun, and Ko failed to state in his affidavit that nothing illegal was found.[6] Plaintiffs also conclusorily allege that the informant was known by Deputy Ko to be unreliable and to have a motive to lie. *Branch's* specificity test requires the factual description of the basis for the informant's unreliability and motive to misrepresent. *Branch v. Tunnell*, 937 F.2d 1382, 1388 (9th Cir. 1991) (holding that a conclusory assertion "unsupported by any specific factual allegations, is insufficient to allege a violation of rights under the heightened pleading standard.").

The county defendants also argue that even if the informant's statements are excluded there was still probable cause to issue the search warrant based on the corroborating evidence, i.e., Michael Golden's admission that he owned "exotic" weapons. Plaintiffs do not rely on the failure to include information regarding the informant's motive to lie or the conclusory allegation relating to the reliability of the informant to meet the heightened pleading standard of *Branch*; they further allege Ko's material omission was that the search had already occurred and that Deputy Ko did not disclose to the judge that nothing had been found in the house. From this it is inferred that plaintiffs contend obtaining the search warrant was a post hoc action taken to legitimate an allegedly unlawful search. Viewing the allegations in the light most favorable to the plaintiffs, it is possible the search warrant would not have

---

[6] Plaintiffs allege that when they arrived at the Golden residence at approximately 6 p.m., the door had already been battered open and that they were not given a copy of the search warrant until after 10 p.m. The warrant was issued at 6:21 p.m.

15

issued if all of the alleged exculpatory information had been included in the affidavit, i.e., that the search had already begun and nothing was found.  From the face of the warrant, the judge signed the warrant at 6:21 p.m.  Plaintiff's allege that when they arrived at their residence around 6 p.m. the search had already begun.

The county defendants do not address the second requirement of qualified immunity, i.e., whether the right was clearly established.  To decide whether a right was clearly established, the court must look at the specific circumstances in which the right was allegedly violated. *Saucier*, 121 S.Ct. at 2156.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*.  It was clearly established in the Ninth Circuit in 1999, that knowing failure to include material information that would prevent an affidavit from deceiving a judge is a violation of the Fourth Amendment.  *Liston v. County of Riverside*, 120 F.3d 965, 973 (9th Cir. 1997).  "[A] Fourth Amendment violation occurs where 'the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading.'" *Id*. (quoting *United States v. Stanert*, 762 F.2d 775 (1985), *amended by* 769 F.2d 1410 (1985)).  A reasonable officer should know that failure to fully inform a judge that a search had commenced and nothing had been found, would be misleading.

Viewing the complaint's allegations in the light most favorable to the plaintiffs, Deputy Ko is not entitled to

16

qualified immunity as to the validity of the search warrant. The county defendants' motion is DENIED as to Deputy Ko's qualified immunity.

### B. THE COUNTY DEFENDANTS' MOTION FOR A MORE DEFINITE STATEMENT

The county defendants move for a more definite statement arguing that the plaintiffs' claims for relief are lumped together under a single heading "Cause of Action--Violation of Constitutional Rights--All Defendants" and that plaintiffs should state which constitutional claim is being made against which defendant. In the complaint, plaintiffs have stated which defendants are alleged to have done what to whom. Based on these factual allegations, defendants can easily ascertain what constitutional violations are alleged against each defendant. Plaintiffs are "not required to state the statutory or constitutional basis for [their] claim, only the facts underlying it." *McCalden v. California Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990). Defendants should be able to form a responsive pleading based on the third amended complaint. The county defendants' motion for a more definite statement is DENIED.

### C. CITY DEFENDANTS' SUMMARY JUDGMENT MOTION

The April 15, 2002 order dismissing the city defendants with prejudice makes this motion moot, it does not need to, and will not, be decided.

### D. PLAINTIFFS' RULE 56(f) MOTION

In their opposition, plaintiffs state that "discovery is not

17

yet completed in this case and it would be premature to grant a summary judgment motion to defendants for this reason." Doc. 101 at 6:15-16.  If by this statement plaintiffs intended to make a Rule 56(f) motion related to the city defendants' summary judgment motion, the issue is now moot.

## IV.  CONCLUSION

The county defendants' motion to dismiss is DENIED, IN PART and GRANTED, IN PART.  The county defendants' motion to dismiss the conspiracy claim is GRANTED WITH PREJUDICE.  Their motion to dismiss the warrant claim against Deputy Ko and the excessive force claim are DENIED.

The county defendants' motion for a more definite statement is DENIED.

The city defendants' summary judgment motion and plaintiffs' Rule 56(f) motion are MOOT.

SO ORDERED.

DATED:  4-17-02

_____
Oliver W. Danger
UNITED STATES DISTRICT JUDGE

United States District Court
for the
Eastern District of California
April 18, 2002

* * CERTIFICATE OF SERVICE * *

1:00-cv-07173

Golden

v.

Fresno County

---

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on April 18, 2002, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

OWW SMS
Kate Wells
Law Offices of Kate Wells
2600 Fresno Street
Santa Cruz, CA  95062

James J Arendt
The Law Firm of Weakley Ratliff Arendt and McGuire LLP
1630 East Shaw Avenue
Suite 176
Fresno, CA  93710

James Darvin Weakley
The Law Firm of Weakley Ratliff Arendt and McGuire LLP
1630 East Shaw Avenue
Suite 176
Fresno, CA  93710

Harvie Ruth Schnitzer
City of Fresno
2600 Fresno Street
Fresno, CA  93721-3602

*Deputy Clerk* (signature)